MONTPELIER AND WELLS RIVER RAILROAD COMPANY *v.* JAMES R. LANGDON.

[S. C. 45 Vt. 137.]

*Corporation.    Gen. Sts. ch. 28, § 5.    Subscription to Capital Stock.*

When a subscription to the capital stock of a corporation is made to the corporation directly, after it is organized though informally, and after it exists as a corporation *de facto*, and is acting in its corporate capacity under its corporate name, the subscriber cannot, in a suit upon such subscription, deny the legal organization of the corporation.

Sec. 5, ch. 28, of the Gen. Sts., which provides that "every person subscribing for stock in any railroad in this state, shall be required to pay *to the commissioner*, at the time of subscribing, five per centum on the amount of stock for which he shall subscribe," &c., does not apply when the subscription is made to the corporation directly, after its organization and existence as a corporation *de facto*.

The defendant was one of the commissioners for receiving subscriptions to the capital stock of the plaintiff.  On January 19, 1869, he subscribed for 100 shares of said stock. On December 20, 1869, with the consent of the other commissioners, he attached a certain condition to his subscription, to be complied with within one year thereafter.  On January 4, 1870, the plaintiff organized under its act of incorporation, at which time the book containing the defendant's subscription was in his hands as commissioner as aforesaid; and was retained by him till January 18, 1870, when said condition was complied with, and he delivered said book to the directors of the company.  From the 4th to the 18th of January, the company had been acting under its charter as an organized company. *Held*, that these facts constituted the defendant's subscription a subscription made to the plaintiff directly, while acting as a corporation *de facto*. .

ASSUMPSIT upon a subscription to the capital stock of the plaintiff corporation. Plea, the general issue, and notice denying the plaintiff's legal organization. Trial by jury, March term, 1873, Washington county, BARRETT, J., presiding.

The plaintiff introduced in evidence its act of incorporation, approved November 6, 1867, and an act explanatory thereof, approved October 13, 1870. Also, an act to enable the towns in the counties of Washington, Caledonia, and Orange, to aid in the construction of the plaintiff's railroad, approved October 30, 1868, with the proper certificate of compliance with the provisions thereof; also an act in amendment thereof, approved November 16, 1869. Said act of incorporation appointed twenty-seven persons as commissioners for receiving subscription to the capital stock of said corporation, of whom the defendant was one, and provided that a majority thereof should be a quorum for the transaction of business. The plaintiff also introduced in evidence the record of the proceedings of the first regular meeting of said commissioners, held on the 26th day of December, 1868, by which it appeared that only fourteen of said commissioners were present, of whom the defendant was one, and that a vote was then passed,

"That Roderick Richardson, James R. Langdon, and John A. Page, be a committee to give legal public notice of the times and places of the opening of books of subscription to the capital stock of the company, and also to open the books at such times and places, and to receive the five per cent. to be paid on all subscriptions for stock."

The plaintiff also introduced the record of a notice given pursuant to said vote, dated the said 26th day of December, and signed by said committee. Also, a record of the proceedings of a meeting of said commissioners, held December 20, 1869, by which it appeared that only fifteen of said commissioners were present, of whom the defendant was one, and that it was then

"Voted, that the books for subscription to the stock of the company remain open until such time as the commissioners shall fix for the organization of the corporation by the election of directors.

" *Voted,* that the committee heretofore appointed to receive subscriptions, be and hereby are authorized to call a meeting of the stockholders for the election of directors, as soon as one hundred thousand dollars of stock shall have been subscribed."

Also, the record of a call of a meeting of the stockholders pursuant to the vote last aforesaid, signed by said committee, and dated December 21, 1869. Also, the record of a meeting of stockholders, held pursuant to said call on January 4, 1870, at which it was voted that the number of directors of said corporation be nine, whereof five were then elected, and the time and place of their first meeting designated. The plaintiff also introduced evidence tending to show a continuation of its organization after the said 4th day of January, and that it had been engaged in the construction of its railroad ever since that time, and therein had expended large sums of money, incurred great expense, and assumed heavy liabilities, previous to the commencement of this suit. The plaintiff also introduced the defendant's subscription in evidence. It did not appear that the persons named as commissioners in said act, were ever all present at any of the meetings of that board, or that personal notice of said meetings was given to the commissioners by their clerk, or any notice thereof, unless through newspapers, and it did not appear that such notice was given. It also appeared that the defendant did not pay at the time of subscribing, the five per centum on the amount of stock for which he subscribed, as required by § 5, ch. 28, of the Gen. Sts., and that he had never paid anything upon his said subscription. In regard to the defendant's subscription, the plaintiff introduced testimony tending to show, substantially, what it offered to show as stated in the 45th Vt. 137, *q. v.* The other facts sufficiently appear in the opinion.

The defendant's counsel, not desiring to go to the jury upon any question, claimed that a lawful organization of the plaintiff corporation was not shown, for that it did not appear that all the commissioners named in said act of incorporation, were present at the meetings of said commissioners, or were notified thereof, and insisted that that was necessary, as their functions in assigning the stock among the subscribers thereto were judicial. But the

court held, that as it appeared that the full amount of the capital stock had not been subscribed for, there was no occasion for the exercise of any but ministerial functions by the commissioners. The defendant's counsel also claimed that the defendant's subscription was not valid, because he did not pay said five per centum at the time of subscribing. But the court held that the defendant could not avail himself of that objection, because, if there was any default in that respect, it was chargeable to his own neglect to perform a duty which the law imposed upon him as commissioner and committee as aforesaid. The court directed a verdict for the plaintiff for the amount due on said subscription; to which the defendant excepted.

*B. F. Fifield* and *H. W. Heaton,* for the defendant.

The acceptance of subscriptions for stock by commissioners involves discretion. It therefore can only be done at a legal meeting of the commissioners, and if not legally accepted, a subscriber never becomes a stockholder, and there could be no legal meeting unless all were present or all notified. 1 Redf. Railw. 19, 63, 65, 66; *Crocker & Williams* v. *Crane,* 21 Wend. 211; *Napier* v. *Poe,* 12 Ga. 170. The fact that the maximum amount required by the charter, was not subscribed, does not affect the question. The commissioners had a discretion in regard to the rejection or acceptance of any subscription, however large or small. It was their duty to reject any subscription made in bad faith. In an action for calls, the plaintiff must prove a legal organization, as a condition precedent to a recovery, if the defendant insists upon it. The rule is different when the action is upon a contract made with a corporation itself. *Bill* v. *Fourth Western Turnpike Co.* 14 Johns. 416; 10 Wend. 269.

The omission to collect the five per cent. at the time of subscription, is fatal; otherwise, the statute is repealed by the court. The statute is not directory. The public have an interest that subscriptions should be made in good faith, and as an earnest of it, that something should be paid down. Hence, neither party can waive its provisions. *Jenkins* v. *Union Turnpike Co.* 1 Caines, 85; *Hibernian Turnpike Co.* v. *Henderson,* 8 S. & R.

217 ; *Charlotte & S. C. R. R. Co.* v. *Blakeley*, 3 Strob. (s. c.) 245 ; Gen. Sts. 216. The fact that the defendant was a commissioner, does not estop him from setting up this defence. He signed as an individual, not as a commissioner. He could not contract with himself. There was no duty upon him as an individual, to pay to himself as commissioner. It was the duty of the other commissioners to collect the five per cent. The statute does not impose the duty upon the subscriber to pay. It imposes the duty upon the commissioner to collect. This duty is upon the whole body of the commissioners. This duty they did not and could not perform, because they never had a legal meeting.

*C. H. Heath, J. A. Wing,* and *Paul Dillingham,* for the plaintiff.

The proof which was undisputed showed the plaintiff a corporation *de facto.* All that was necessary was, to show an incorporation of the company, that it was doing business and constructing its road, and that the defendant dealt with it as a corporation. *Searsburgh Turnpike Co.* v. *Cutter,* 6 Vt 315 ; *Bank of Manchester* v. *Allen,* 11 Vt. 302 ; *McDaniels* v. *Flower Brook Manufacturing Co.* 22 Vt. 274 ; *Bank of United States* v. *Lyman et als.* 20 Vt. 666 ; *Ætna Ins. Co.* v. *Wires & Peck,* 28 Vt. 93 ; *Vt. Mining & Quarrying Co. et als.* v. *Windham County Bank et als.* 44 Vt. 489 ; *M. E. Church* v. *Perkill,* 19 N. Y. 482 ; *People* v. *Bigler,* Hill & D. (N. Y.), 133 ; *James* v. *Dana,* 24 Barb. 395 ; *Coine* v. *Bingham,* 39 Me. 35 ; *Hagerstown Turnpike Co.* v. *Croyer,* 5 Har. & J. (Md.) 122 ; *Turnpike Co.* v. *Hendricks,* 16 B. Mon. (Ky.) 4 ; *Anderson* v. *Newcastle, &c. R. R. Co.* 12 Ind. 376.

Langdon was one of the commissioners named in the act, was present and acted at those meetings, acted as a committee by appointment, contracted with the corporation as such, and is now estopped from setting up any defect in the organization, especially as he did not deliver his subscription-book containing his subscription, to the commissioners, but to the directors of the road, and no assignment of stock could be made to him until

the 18th day of January, as his subscription was conditional till that day.

We insist that the subscriber cannot take advantage of his own wrong, and avoid his subscription for the non-payment of the five per cent. The words of the act do not make the subscription void. If the other subscribers who had paid, should object, the subscriber, perhaps, could not insist on his subscription against the objection; but he would be bound by it if they consented to the same. This is a provision for the benefit of the company. *Vt. Central R. R. Co.* v. *Clayes*, 21 Vt. 30. The subscription was made by the defendant, while he held the books as commissioner, and if he did not pay the five per cent., it was a fraud on the company, for which he should be held liable. 1 Redf. Railw. 187–8.

There is no law that requires the directors of a railroad to require five per cent. paid on the capital stock at the time of subscription. The corporation, after it is organized, is considered capable of making contracts. The subscription of the defendant, as amended on the 20th of December, 1869, and accepted by the commissioners, was simply a proposition to the plaintiff to take a hundred shares, on condition that individuals in Montpelier would subscribe $40,000 more. It was simply a proposition in writing, and not binding, and did not require the payment of the five per cent. until the condition was complied with. The corporation was organized on the 4th day of January, 1870, and the condition was not complied with till the 18th of that month, and on that day the defendant, as commissioner, delivered his subscription to the directors, and they accepted it as a valid subscription, without requiring the payment of the five per cent., as they legally might; and therefore the law requiring the payment of five per cent. to the commissioners, does not apply to this case. 1 Redf. Railw., referring to the *Ashtabula & New L. Railroad* v. *Smith*, 10 Ohio, N. S. 328; *Shelby Railroad Co.* v. *Hendricks*, 16 B. Mon. 4; *Chamberlin* v. *Painesville & Hudson R. R.* 15 Ohio, 222; *Railroad* v. *Yeaman*, and *Railroad* v. *Casey*, 20 Ill. 654. Outside of New York, the decisions are all one way, and they are conflicting in New York.

38

The opinion of the court was delivered by

Ross, J.   The objections urged by the counsel for the defendant against the correctness of the judgment of the county court, are, in substance, first ; that the commissioners named in the act of incorporation for receiving subscriptions to the stock of the company, were not all notified to be present, and were not all present, at any of the meetings of the commissioners held preliminary to the organization of the company, and that for this reason, there has been no legal organization of the company ; which, he claims, the defendant, under his notice, can avail himself of in defence of this action to collect assessments made by the directors on the defendant's subscription to the stock ; second, that the defendant's subscription is not binding, because he did not, at the time of making the same, pay the five *per centum* thereof, required by § 5, ch. 28 of the Gen. Sts.   Neither of these objections can avail the defendant, if his subscription was made to the plaintiff, after it was organized, though informally, and existing as a corporation *de facto*.   For, if the defendant's contract of subscription was made with the plaintiff as a chartered corporation acting in its corporate capacity and under its corporate name, he cannot in this action call in question the legality of its organization.   All that a corporation is called upon to prove, to establish its existence in litigation with individuals dealing with it, is its charter and user under it.   This constitutes it a corporation *de facto*, which is sufficient in ordinary suits between the corporation and its debtors.   The validity of its corporate existence can only be tested by proceedings in behalf of the people. This is established by numerous decisions in this and other states, and is not denied by the counsel for the defendant.   Neither does the statute require the payment of five *per centum* of the amount of the stock subscribed for, at the time of making the subscription, when the subscription is made to the corporation after its organization and existence as a corporation *de facto*.   Conceding the objections of the defendant to be well taken if his subscription was made to the commissioners, in regard to which there are doubts, the determinative question is, whether the defendant's subscription was made to the commissioners, or to the plaintiff, after

it existed as a corporation *de facto*. From the unquestioned facts in the case, it appears that the defendant, Jan. 19, 1869, subscribed for one hundred shares of the stock, and with the consent of the other commissioners, December 20, 1869, he attached to it the condition, that good and responsible individuals in Montpelier subscribe fifty thousand dollars within one year from Jan. 19, 1869, and that he should be furnished with a list of the subscribers, and the amount subscribed by each, Jan. 19, 1870. January 4, 1870, the company was organized. The book containing the defendant's subscription was then in his hands as one of the commissioners named in the act of incorporation, and was retained by him till the condition was complied with, Jan. 18, 1870. He then delivered it to the directors of the company. From January 4th to January 18th, the company had been acting under its charter as an organized company. These facts constitute the defendant's subscription a subscription made to the plaintiff directly, while acting as a corporation *de facto*. Until the condition was complied with and it was delivered to the directors, it was imperfect and invalid as a subscription. It became a perfected, operative subscription when the condition was complied with, and it was delivered to the directors. The five *per centum*, if required on such a subscription, could not have been exacted of the defendant until that time. Says REDFIELD, J., in his work on railways, vol. 1, p. 205 : " A subscription upon the performance of a condition becomes absolute upon such performance." * * * " The subscription takes effect from that time ; the first instalment required to be paid at the time of the subscription, then becomes due and payable, and the subscriber liable to assessments for the remainder." *Ashtabula & New L. Railw.* v. *Smith*, 10 Ohio N. S. 328. This disposes of all the objections taken by the counsel for the defendant in the county court and now relied upon. If he had there taken the objection which he now raises, that the county court erroneously allowed the plaintiff to recover the five *per centum* in addition to the three assessments made by the company, there would have been difficulty in sustaining the judgment of the county court to that extent. As we understand the statute, an assessment must be made by the company on subscriptions made

to the company after its organization, before any portion of the subscription can be collected, and only so much of the subscription can be collected as has been assessed. As no exception was taken covering this point, the judgment of the county court is affirmed.